## SALE OF UNISSUED STOCK TO DIRECTOR ON TERMS UNFAIR TO THE COMPANY.

Circuit Court of Cuyahoga County.

OWEN W. CALLAHAN v. THE OWEN STEEL CRANE COMPANY ET AL.

Decided, May, 1912.

*Corporations—Sale of Unissued Capital Stock—Fraud.*

A sale of unissued treasury stock to one of the directors at par on a cash payment of 2% and a promise to pay the balance in ten annual payments, no efforts being shown to sell the stock to others, but cash offers therefor having been received and refused, additional capital not being necessary and the stock being probably worth more than par, because it was then paying 20% dividends, will be set aside as a fraud upon the corporation and its stockholders.

*Max P. Goodman,* for plaintiff in error.
*Wing, Myler, & Turney,* contra.

WINCH, J.; MARVIN, J., and NIMAN, J., concur.

The plaintiff in this case seeks to have a sale and issue of fifty shares of stock of the Crane Company, to the defendant J. Frank Rollings, set aside and held for naught, on the ground that the transaction was illegal and fraudulent.

It appears that the corporation was organized in May, 1910, with an authorized capital stock of $25,000, divided into 250 shares of one hundred dollars each. Two hundred shares of stock were issued to plaintiff in payment for the good will of his steel crane business and certain applications for patents on cranes, which he transferred to the company.

Callahan sold eighty of his shares to the defendants Rollings and Eagan, and their wives, retaining one hundred and twenty shares for himself. When he made this sale to Rollings and Eagan, he entered into a written agreement with them that they should have the control of the corporation and a majority of the board of directors, and that the fifty shares of unissued or treas-

ury stock should be issued to a trustee for the joint benefit of the three parties. Pursuant to this agreement the corporation elected Rollings and his wife and Eagan and his wife as four of the five directors of the company, and Callahan as the fifth director.

The corporation had no plant or physical assets when it started business; it was a mere selling agency, soliciting orders for cranes which it filled by having cranes manufactured for it by others.

The company met with some success in the next few months. In January, 1911, it had an annual meeting and re-elected the same directors under whom it continued business until the latter part of 1911. Meanwhile it had paid 20% dividends to its stockholders, and accumulated $3,000 or $4,000 of profits in addition. Then trouble arose and Callahan demanded that the original tripartite agreement for the control of the company be rescinded; Eagan and Rollings demurred and issued the fifty shares of treasury stock, without consideration, to the wife of one of them as trustee. Then Callahan brought suit to have this issue of stock rescinded, and while the suit was pending, by mutual consent, said tripartite written agreement was rescinded and annulled; the stock was returned to the company and the case was dismissed.

Thereupon Callahan notified the other four directors that he stood ready to purchase said fifty shares of stock and pay par for them, and a meeting being called at once, he appeared at the meeting, demanded at least his pro rata share of said stock, thirty shares, and offered to pay therefor in cash. The directors refused his offer and at once, by a vote of Eagan, his wife and Rolling's wife, accepted an offer of Rollings to take the fifty shares and pay therefor $100 cash and the balance in annual payments of $500 each. Rollings himself did not vote on this proposition, and offered no security for the deferred payments. The evidence fails to show that he is good for the amount of his agreement.

At once Callahan brought this suit to set aside said sale of fifty shares to Rollings, the case being removed here by appeal

and heard on the evidence. It is apparent that this controversy is simply over the right of control of the corporation.

The defendants justify their actions in the premises on two grounds: first, that Callahan induced them to buy their stock from him on an agreement that they should have control of the corporation, and second, that the directors had full discretion to sell the stock to anybody to whom they desired to sell it.

The first point is easily disposed of on the evidence. Whatever agreements were made between the parties for control of the corporation were reduced to writing and merged in that writing; the written agreement was thereafter, by mutual consent, terminated. That voluntary action of the parties in the midst of litigation must be considered as a settlement of the whole matter, so far as an agreement for control of the corporation was concerned, and put an end to all moral obligation on Callahan's part to further live up to his agreement. It is doubtful if the agreement ever had any legal force.

As to the right of the directors to dispose of this unissued fifty shares of stock as they did, it has two aspects, their legal right to distribute the stock as they saw fit, and their good faith in selling it to one of their number on credit, rejecting at the same time the plaintiff's cash offer therefor.

Whatever the law applicable to the facts in this case may be, as decided in other states and laid down by the text writers, it is plainly expressed in this state by the syllabus of the case of *Simms* v. *Street Railroad Co.*, 37 O. S., 556, as follows:

"By the Revised Statutes, Section 3248, the powers, business and property of a corporation having a capital stock, must be exercised, conducted and controlled by its board of directors, who are duly elected and qualified; and a court of equity will not, on the application of a stockholder, interfere with its management and control of the corporate business, while acting within the scope of its authority, unless they are guilty of a breach of trust to the injury of such stockholder.

"This principle is applicable to the action of the board of directors, in receiving subscriptions for that portion of the authorized capital not taken before the corporation was organized, where it will promote the objects of the corporation. A subscription for such stock made by one member of the board,

with the consent of the others, and payment of the par value thereof, when the transaction is free from fraud, and is beneficial to the corporation, will not be set aside at the instance of a stockholder, when no action has been taken to withhold such stock from subscription or sale.''

We think weight must be given to the phrases: ''where it will promote the objects of the corporation'' and ''when the transaction is free from fraud, and is beneficial to the corporation.''

In the Simms case it affirmatively appeared that the sale of unissued stock to Tom L. Johnson was beneficial to the corporation and was free from fraud.

''Repeated efforts had been made by the board to place this stock, but with little success.

''The financial condition of the company was such that additional capital was necessary.

''From the allegations of the petition it (the stock) was worth much less'' (than par).

''The consideration received was for the full value of said stock. The property and money received was necessary and proper for the use of the company. In short, the transaction was bona fide and beneficial to the company.''

What are the facts in the case at bar?

Not only were no efforts made to sell the stock to others, but cash offers therefor from Callahan and his sons were refused. The financial condition of the company was such that additional capital was not necessary.

From the evidence it is likely the stock was then worth more than par; at least it was paying 20% dividends, which is probably the reason the opposing factions have got into this scramble for it.

No good consideration was received for the stock; a cash payment of 2% and a promise to pay the balance in ten years was for the benefit of director Rollings, who received the stock, and not for the benefit of the corporation. In short, the transaction was not *bona fide* and was not beneficial to the company in any aspect of it, and only beneficial to Rollings and his faction, the other directors who voted the stock to him,

We are unable to say, as required by the Simms case that the transaction in question is free from fraud and beneficial to the company. It appears to have been such an abuse of the trust reposed in the board as warrants the interference of the chancellor.

Judgment for plaintiff.

---

## EQUITABLE INTEREST UNDER A LAND CONTRACT NOT SUBJECT TO A JUDGMENT LIEN.